IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGNIIA
Richmond Division



UNITED STATES OF AMERICA

v.  Criminal No. 3:09cr191

MATTHEW JAMES RUSSO

### MEMORANDUM OPINION

This matter is before the Court on the Defendant Matthew James Russo's Motion for Judgment of Acquittal, or, in the Alternative, Motion for New Trial (Docket No. 22). For the reasons set forth below, the motion will be denied.

### STATEMENT OF FACTS

As established at trial, the facts are as follows. An Agent for Immigration and Customs Enforcement ("ICE") conducted an investigation into a foreign child pornography website, "Illegal.cp," which, for $79.99, offered 21 days of access to material containing child pornography. When a user purchased such a 21-day membership, the charge to his credit card was discretely labeled "AdSoft."[1]

Matthew Russo came to ICE's attention during an investigation of the Illegal.cp website. Based on ICE's

---

[1] Nominally, AdSoft is/was a company that sold software products. An ICE agent involved in the Illegal.cp investigation confirmed, however, that she was unable to purchase any legitimate software products from AdSoft.

investigative findings, two ICE agents conducted a "knock and talk" with Mr. Russo at his residence. Although the conversation was at first light and civil, the atmosphere intensified when the agents asked Mr. Russo about charges to his debit card. At that point, Mr. Russo said something to the effect of, "what are you here for -- Guns? Child Porn? Money?," without the agents having first mentioned the subject of child pornography. The agents then examined Russo's debit card and seized two computers from the household.

An ICE Forensic Expert examined the two computers, one of which was found to contain several items of evidence. First, hundreds of child pornographic images were found in the AOL cache folder, having been downloaded to that folder between February and September 2007, based on the internet browsing of an AOL user with the username "rdendron."[2] Second, hundreds more images were found in the unallocated space of the computer's hard drive. The ICE Forensic Expert testified that the computer's operating system automatically transferred these images from folders such as the cache folder. Third, dozens of sites, with names advertising child pornographic content, were bookmarked as "favorites" on the rdendron profile. Fourth, the

---

[2] A second username for this computer had no pornographic images associated with it.

Internet Explorer web browser's history revealed that several such child-pornographically named sites had been visited by a user on that computer.

The ICE Forensic Expert, who was well qualified in his field, came to the conclusion that Russo had made significant efforts to access websites containing child pornography. The Forensic Expert, along with another ICE Agent, then interviewed Russo, and, during the interview, Russo stated that the rdendron profile was his, and he admitted to viewing child pornography, among other types of pornography.

Russo called no witnesses; however, he vigorously questioned the sufficiency of the Government's evidence at trial. He successfully argued for excluding some significant items of the Government's evidence. He also presented alternative theories of how the hundreds of images and dozens of websites appeared on his computer.

At trial, when the Government had concluded its case, Russo moved for a Judgment of Acquittal pursuant to Fed. R. Crim. P. 29, contending that the evidence presented was insufficient to sustain a guilty verdict. The Court denied the motion. After closing arguments, the Court found the Defendant guilty as charged. This motion followed.

## DISCUSSION

When considering whether the Government's evidence is sufficient to support a conviction, "[t]he relevant question is . . . whether, viewing the evidence in the light most favorable to the government, any rational trier of facts could have found the defendant guilty beyond a reasonable doubt." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. Va. 1982). "To that end, this Court 'must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established.'" United States v. Cameron, 573 F.3d 179, 183 (4th Cir. 2009) (quoting Tresvant, 677 F.2d at 1021).

**1. The Evidence that the Defendant Attempted to Access the Illegal.cp Site is Sufficient to Sustain the Verdict**

Russo now contends that the evidence fails to show that he attempted to access the Illegal.cp site. Specifically, he asserts that the Government never showed that the Defendant: (1) received a confirmation email allowing him to access the full Illegal.cp site; (2) visited the Illegal.cp site; or (3) had any specific images from Illegal.cp on his computer. To the contrary, the totality of the Government's evidence is sufficient to support a finding, beyond a reasonable doubt, that

Russo attempted to receive material containing child pornography by way of the Illegal.cp website.

In addition to proving the basic statutory elements of knowingly receiving child pornography in interstate commerce, the Government's burden in this case also included proving "attempt" (though charging "attempt" relieved the Government of its burden to prove the completed crime). At common law, attempt has two elements: (1) specific intent to commit the completed offense; and (2) a substantial step toward completing it. See United States v. Resendiz-Ponce, 549 U.S. 102, 106 (U.S. 2007) ("At common law, the attempt to commit a crime was itself a crime if the perpetrator not only intended to commit the completed offense, but also performed 'some open deed tending to the execution of his intent.'") (citations omitted).

In this case, Russo's specific intent to receive child pornography is clear, from his own words and the images on his computer. That Russo took a substantial step toward that end, even when the question is artificially narrowed to the totality of the evidence that is related only to the Illegal.cp site, is thoroughly established. Russo viewed the introductory page of the Illegal.cp site, which, the parties stipulated, contained

child pornography.[3] His debit card was charged $79.99 by AdSoft, a company that, from the only account of a person with any firsthand knowledge, did not in fact conduct any legitimate business, but was instead used exclusively for processing payments to child pornography websites. This payment was a substantial step toward receiving child pornography from the Illegal.cp site, regardless of whether Russo ever received a confirmation email or accessed the site later.

The Government's inability to connect images from the Illegal.cp site to images found on the Defendant's computer is of no moment. Based on the Forensic Expert's testimony of how files are saved in the AOL cache folder, subsequently moved by the operating system into the computer's unallocated space, and then deleted permanently, one would not expect to find files accessed in March 2006 (when Russo registered for Illegal.cp site access) during a forensic examination conducted over a year and a half later in November 2007.

Furthermore, Russo is mistaken in one of his fundamental assumptions. Specifically, Russo argues that "the Court

---

[3] It is true that the Government presented no *direct* evidence that Russo actually viewed the introductory page of the Illegal.cp site. However, the Court must consider the circumstantial evidence of the $79.99 AdSoft charge to Russo's debit card, combined with the evidence that Russo had viewed child pornography in other contexts, and the absence of anything other than speculation by the Defendant to rebut this circumstantial evidence. As a whole, the evidence shows, beyond a reasonable doubt, that Russo viewed this introductory page of the website.

indicated at various points that the evidence was insufficient as to the attempted receipt of material containing child pornography from the Illegal.cp website." Def. Mot. at 3-4. The Court did not so indicate. The Court posed pointed questions to counsel for both Russo and the Government to ensure presentation of a comprehensive picture of events. The Government, in response to the Court's questions, stated that Russo was charged with attempt, rather than the completed crime, due to difficulties in establishing the actual, active receipt of specific images by Russo. Ultimately, although the Court may have harbored doubts about the wisdom of charging Russo with attempt rather than the completed crime, the Court concluded that the Government had met its burden to prove attempted receipt of child pornography by way of the Illegal.cp site. Moreover, the evidence also showed that Russo attempted to possess other child pornography.

**2. Additional Evidence Presented to and Considered by the Grand Jury was also Sufficient to Sustain the Verdict**

Russo's second contention is that the evidence presented to the Court differed so much from the evidence upon which Russo was indicted that the trial evidence "constructively amended" the indictment. Because the evidence presented to the Grand Jury centered on the Illegal.cp site, Russo argues, while the

evidence presented at trial focused more on the images and websites found on his computer, Russo asserts that he was convicted on a basis not charged in the Indictment.

"When the government, through its presentation of evidence and/or its argument . . . broadens the bases for conviction beyond those charged in the indictment, a constructive amendment -- sometimes referred to as a fatal variance -- occurs." See United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). Such basis-broadening results in the defendant being convicted of an offense that was not charged in the indictment, violating the Due Process protections of the Fifth Amendment. Id.

> However, not all differences between an indictment and the proof offered at trial, rise to the "fatal" level of a constructive amendment. When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense.

Id. (citations omitted).

In this case, there was no amendment of the indictment. Russo was not charged with an offense substantively different from that of which he was convicted. Nor could Russo claim surprise; the Government submitted a Notice of Intent to Use Expert Testimony (Docket No. 14) a week before trial. This

notice explicitly revealed the Government's approach, and, because its expert witness also served as a fact witness, revealed that the Government's findings would include "hundreds of sexually explicit images" discovered on Russo's computer "[u]nder the AOL profile 'rdendron.'" Government's 16(a)(1)(G) Notice, at 4.

Moreover, there was not even a "mere variance" here. As the Government recites in its Response to the Defendant's Motion, the Grand Jury heard evidence of Russo's attempts to access child pornography that had nothing to do with the Illegal.cp site. Gov. Response at 2-3. The transcript of Grand Jury proceedings that Russo attaches to his motion further demonstrates that his efforts to view child pornography extended far beyond that associated directly with the Illegal.cp site. See generally Transcript at 12:9-10 (noting the Forensic Expert's discovery of "[o]ver 500 images of suspected child pornography"); id. at 14:3-20 (discussing the bookmarks and internet history found on Russo's computer); id. at 15:20-22 (identifying Russo's admission that "he has viewed child pornography on his computer in the past"); id. at 18:9-14 (noting that the Illegal.cp site investigation "led us to [Russo]," after which the Government "found, through a forensic

exam, the . . . additional child pornography images on his computer.").

In sum, although the Grand Jury evidence shows that Russo's access of the Illegal.cp site provided the Government a lead that it investigated, the Grand Jury could not have reasonably believed that Russo's conduct was limited in scope to that associated with the Illegal.cp site.

**3. The Government Proved the Completed Crime, Thereby Proving Attempt**

As the Court noted above, Russo was wrong in his impression that the Court found the Government's evidence relating to the Illegal.cp site insufficient to support a guilty verdict. Russo did astutely observe, however, the Court's consternation that the Government charged Russo with attempt, rather than the completed crime. The Government's evidence proved commission of the *completed crime* beyond a reasonable doubt. It is not evident, therefore, why the Government saddled itself with the additional burden of proving "attempt."

Thus, an alternative basis for sustaining the conviction emerges: the Government proved the completed crime (actual receipt of child pornography) beyond a reasonable doubt, and in proving the completed crime, the Government also proved attempt. When Russo knowingly received child pornography, he did not take

one substantial step towards completion of the underlying crime -- he took *all* substantial steps.[4]

The Court notes that conceptually, it is possible to knowingly receive child pornography without *attempting* to have done so, because an attempt crime requires "specific intent" to commit the underlying crime, as opposed to the lesser mens rea, "knowingly," that 18 U.S.C. 2252A requires. Cf. Braxton v. United States, 500 U.S. 344, 351 fn* (1991) (noting analogously that, for common law murder, "attempt" denotes "a specific intent to commit the unlawful act. Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill."). But, in this case, the evidence proved Russo's specific intent to receive child pornography beyond a reasonable doubt. Thus, both elements of attempt are proven: specific intent and substantial steps.

## CONCLUSION

Taken as a whole, the Government presented sufficient evidence to sustain Russo's conviction for attempted receipt of material containing child pornography. The Government did not

---

[4] Although the Fourth Circuit has, in one instance, indicated that an attempt charge requires that the substantial step "fell short of the commission of the intended crime due to intervening circumstances," United States v. Pratt, 351 F.3d 131, 135 (4th Cir. 2003), this appears to be mere dicta. Research has turned up no reported cases finding a defendant not guilty of an attempt charge because he was successful in completing the crime.

constructively amend the proceedings, as Russo asserts, Def. Mot. at 4 (citing United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999)). Furthermore, although the Government presented evidence sufficient to support a finding of *actual* receipt of material containing child pornography, the Government also proved attempted receipt thereof. The Government proved this to the Grand Jury's satisfaction, resulting in a true bill. The Government then proved the crime beyond a reasonable doubt to the Court, resulting in the Defendant's conviction.

Based on the foregoing, the Defendant's Motion for Acquittal or, in the Alternative, Motion for a New Trial, will be denied.

It is SO ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 16, 2009